# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-4004

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KENNETH SHEARER,

Defendant-Appellant.

———————

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 01 CR 49—**William C. Lee**, *Judge.*

———————

ARGUED JUNE 4, 2004—DECIDED AUGUST 12, 2004

———————

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and
EVANS, *Circuit Judges.*

FLAUM, *Chief Judge.* On June 20, 2002, Kenneth Shearer
was convicted of dealing in display fireworks without a
license issued by the Bureau of Alcohol, Tobacco & Firearms
("ATF"), placing false labels on cases of display fireworks,
and knowingly receiving display fireworks in interstate
commerce. He now appeals his conviction and sentence. For
the reasons stated herein, we affirm the judgment of con-
viction and remand the case for resentencing.

## I. BACKGROUND

In 1999, Kenneth Shearer was the owner and operator of All American Professional Fireworks ("All American") which was in the business of selling display fireworks. Due to the dangerous nature of such devices, the ATF strictly regulates their distribution and requires that every dealer be licensed and inspected by the ATF. Shearer did not have a such a license, at least not in July 1999 when an undercover agent from the U.S. Consumer Product Safety Commission arrived at All American and purchased two boxes of display fireworks.

As was already noted, display fireworks are inherently dangerous items. Classified as "1.3G" devices, display fireworks are those that contain more than 130 milligrams of flash powder per tube. They are thus distinguishable from consumer fireworks, which are classified as "1.4G" devices and have 130 milligrams or less of flash powder per tube. Unlike consumer fireworks, display fireworks pose a risk of mass detonation. This risk is a serious one, and if there is an accident involving display fireworks, emergency personnel must evacuate all persons within a half-mile radius of the site. To prevent such accidents, display fireworks dealers must store the fireworks in an explosives magazine inspected by the ATF and located away from inhabited buildings and highways. To avoid more purposeful mischief with display fireworks, those transporting the devices must swear under penalty of perjury that they are acting on behalf of one licensed by the ATF, each display firework must be shipped with a specific label designating it as "1.3G", and dealers must keep clear records indicating the amount and type of display fireworks on the premises. In contrast, the ATF has no regulations for the storage, transportation, or distribution of consumer fireworks.

Although Shearer at one time possessed a license to sell display fireworks, this license expired in January 1998.

Thus, when an undercover agent purchased two boxes of single shot Thunder Kings from All American in July 1999, and each Thunder King contained an average of 3,716 milligrams of flash powder per tube, Shearer became the subject of an ATF investigation. The investigation culminated in a search of All American's premises which uncovered twenty-five cases of display fireworks, invoices showing purchases of display fireworks, and an ATF permit issued to a "Robert Bombka." Additionally, ATF agents discovered that many of the cases of display fireworks had false "1.4G" labels placed directly over the correct "1.3G" labels.

Shearer was subsequently indicted and charged with engaging in the business of dealing in display fireworks without an ATF license, placing false labels on cases of display fireworks in violation of the Hazardous Materials Transportation Act, and knowingly receiving display fireworks in interstate commerce. After a jury trial, Shearer was convicted on all counts against him and sentenced to concurrent sentences of 80 months' imprisonment and 60 months' imprisonment. Shearer now appeals his conviction and sentence.

## II. DISCUSSION

Shearer's first issue on appeal is whether the district court erred by allowing testimony at trial that Shearer sold display fireworks in 1998 and 2000. Shearer argues that because he was charged only with dealing in display fireworks from May 1999 through July 1999, any evidence regarding 1998 and 2000 is improper character evidence under Federal Rule of Evidence 404(b). The government responds that the evidence was proper under Rule 404(b) because it was used to rebut Shearer's assertion that he was keeping the fireworks for his own personal use and to establish instead that Shearer intended to deal in display fireworks in 1999.

As Shearer failed to object to the use of this evidence at trial, we review the district court's admission of the testimony for plain error. *See United States v. Carroll*, 871 F.2d 689, 691 (7th Cir. 1989). Under this standard of review, we must find that: (1) an error occurred; (2) the error was "plain," that is, it was clear or obvious; and (3) the error affected the outcome of the district court proceedings. *See United States v. Olano*, 507 U.S. 725, 731-35 (1993). Unfortunately for Shearer, he cannot show any error, let alone an error that is plain.

The challenged testimony is that of two fireworks vendors who purchased display fireworks from All American annually. One of these vendors, Pauline St. Marie, testified that she spent approximately $10,000 at All American each season, beginning in 1996 and continuing until 2000. The other vendor, Johnathan Hetzer, testified that he began purchasing cases of display fireworks from All American in 1998 and returned in 1999 with yet a third seasonal fireworks seller, Michael Crosby. The testimony of these vendors established that All American generated large profits by dealing in display fireworks, and that it had ongoing relationships with customers who transacted business with All American regularly. This, in turn, helped show that Shearer's possession of twenty-five cases of display fireworks was for the purpose of dealing in display fireworks rather than for Shearer's personal use.

Rule 404(b) does not ban all evidence of a defendant's prior bad acts. It prohibits only evidence used "to prove the character of a person in order to show action in conformity therewith," while allowing evidence that is for the purpose of proving such things as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). In this case, the government had the burden of showing that Shearer was engaged in the business of dealing in display fireworks. Shearer disputed this and, in fact, argued that he was simply keeping display

fireworks for his own personal use. St. Marie's and Hetzer's testimony was properly directed towards proving Shearer's intent to deal by demonstrating that Shearer engaged in regular and repeated transactions involving display fireworks with a consistent group of buyers. The admission of this evidence therefore did not violate Rule 404(b).

Shearer next contends that his sentence was improper. Specifically, Shearer challenges several enhancements to his sentence based upon the district judge's factual findings that: (1) Shearer's offense involved more than 1,000 pounds of explosive materials; (2) Shearer was the organizer or leader of a criminal organization that involved five or more participants or was otherwise extensive; (3) Shearer used a minor to commit the offense; and (4) Shearer committed perjury by denying virtually every fact material to his guilt at trial. Additionally, Shearer believes that he merited a sentence reduction for acceptance of responsibility.

Although such challenges to the application of the Sentencing Guidelines would have presented us with little difficulty a few weeks ago, the Supreme Court's decision in *Blakely v. Washington*, 2004 WL 1402697 (U.S. June 24, 2004) and our reading of *Blakely* in *United States v. Booker*, 2004 WL 1535858 (7th Cir. July 9, 2004), demonstrate that the constitutional validity of the Guidelines is in doubt. *See also United States v. Pineiro*, 2004 WL 1543170 (5th Cir. July 12, 2004) (addressing this issue but holding that *Blakely* should not be read to invalidate the U.S. Sentencing Guidelines). Under *Blakely* as interpreted in *Booker*, a defendant has the right to have a jury decide factual issues that will increase the defendant's sentence. As *Booker* holds, the Guidelines's contrary assertion that a district judge may make such factual determinations based upon the preponderance of the evidence runs afoul of the Sixth Amendment. Thus, in light of *Booker*, we must remand this case to the district court for resentencing.

### III. CONCLUSION

For the foregoing reasons, the judgment of conviction is AFFIRMED. The sentence imposed is VACATED and the case is REMANDED for resentencing.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*